UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

TEXAS INSURANCE COMPANY,

     Plaintiff,

vs.

                          Case No.: 1:26-cv-23233

SUN AFRICA, LLC; UGT RENEWABLES,
LLC; GORAN RAJSIC; ADAM CORTESE;
ROBERT DOYLE; MAINSTREAM
ENERGY INVESTMENTS LLC; THE
ROBERT J. BERMAN TRUST; NIKOLA
KRNETA; ROBERT J. BERMAN;
ABACUS ENERGY INVESTMENTS LLC

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, TEXAS INSURANCE COMPANY ("TIC"), hereby files this Complaint for Declaratory Judgment against the Defendants, SUN AFRICA, LLC ("Sun Africa"); UGT RENEWABLES, LLC ("UGT"); GORAN RAJSIC ("Rajsic); ADAM CORTESE ("Cortese"); ROBERT DOYLE ("Doyle"); MAINSTREAM ENERGY INVESTMENTS LLC ("Mainstream"); THE ROBERT J. BERMAN TRUST (the "Berman Trust"); NIKOLA KRNETA ("Krneta"); ROBERT J. BERMAN ("Berman"); and ABACUS ENERGY INVESTMENTS LLC ("Abacus"), and alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 et seq. for the purpose of determining an actual controversy between the parties with respect to insurance coverage under an insurance policy issued by the Plaintiff, TIC, to Defendant Sun Africa.

2. TIC seeks a judgment declaring that it has no insurance coverage obligations under such insurance policy for responding to a below-defined underlying lawsuit, and that the insurance policy is otherwise rescinded such as to be deemed void ab initio.

## PARTIES, JURISDICTION & VENUE

3. Plaintiff TIC is a foreign corporation incorporated in the state of Texas with its principal place of business in the state of Nebraska and is therefore a citizen of Texas and Nebraska.

4. TIC issued the subject surplus lines insurance policy to Sun Africa in the state of Florida.

5. Defendant Sun Africa is incorporated in Delaware with its principal place of business in Miami, Florida. Defendant Sun Africa is an LLC with three members. Member Berman Trust is a Florida Trust solely owned by Berman, who is a Florida citizen. Member Mainstream is a Delaware incorporated LLC with a principal place of business in Florida, whose sole member is Krneta, who is a Florida citizen. Member Abacus is a Wyoming LLC, whose sole member is Denou-DWC-LLC, a United Arab Emirates incorporated and domiciled entity whose sole member is Nenand Borojevic, a foreign individual residing in Serbia. Thus, Sun Africa is a citizen of Delaware, Florida, Wyoming, United Arab Emirates and Serbia.

6. Defendant UGT is incorporated in Delaware with its principal place of business in Miami, Florida. Defendant UGT is an LLC with three members. Member Berman Trust is a Florida Trust whose sole member is Berman, who is a Florida citizen. Member Mainstream is a Delaware incorporated LLC with a principal place of business in Florida, whose sole member is Krneta, who is a Florida citizen. Member Abacus is a Wyoming LLC, whose sole member is Denou-DWC-LLC, a United Arab Emirates incorporated and domiciled entity whose sole member is Nenand

Borojevic, a foreign individual residing in Serbia. Thus, UGT is a citizen of Delaware, Florida, Wyoming, United Arab Emirates and Serbia.

7. Defendant Mainstream is a Delaware incorporated LLC with a principal place of business in Florida, whose sole member is Krneta, who is a Florida citizen. Thus, Mainstream's citizenship is Delaware and Florida.

8. Defendant Berman Trust is a Florida Trust whose sole member is Berman, who is a Florida citizen. Thus, Berman Trust's citizenship is Florida.

9. Defendant Abacus is a Wyoming LLC, whose sole member is Denou-DWC-LLC, a United Arab Emirates entity whose sole member is Nenand Borojevic, a foreign individual residing in Serbia. Thus, Abacus's citizenship is Wyoming, United Arab Emirates and Serbia.

10. Defendant Krneta is a citizen of Florida, residing in Miami, Florida.

11. Defendant Berman is a citizen of Florida residing in Fort Lauderdale, Florida.

12. Defendant Cortese is a citizen of Washington, D.C residing in Washington, D.C.

13. Defendant Doyle is a citizen of New Jersey residing in Maplewood, New Jersey.

14. Defendant Rajsic resides in Florida and is a citizen of Florida.

15. Complete diversity of citizenship exists in this matter.

16. Sun Africa, UGT, Abacus, and Rajsic assert a right to insurance coverage under the subject insurance policy for legal expense incurred by or on behalf of Sun Africa, UGT, Cortese, Doyle, Abacus and Rajsic in responding to a certain underlying lawsuit filed by Berman, Krneta, Berman Trust and Mainstream, as well as indemnity coverage for relief sought in that underlying lawsuit inclusive of contractual and other damages sought in itemized sums exceeding $7 million.

17. The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorneys' fees.

18. Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

19. Venue is proper in the Middle District of Florida, Miami Division, pursuant to 28 U.S.C. § 1391, because TIC issued a policy of insurance to Sun Africa in the District, which is the same District in which performance under the policy of insurance is sought in relation to payment of legal expense for responding to certain underlying litigation.

20. There is an actual controversy and, pursuant to 28 U.S.C. §§ 2201-2202, this Court may adjudicate this dispute wherein Sun Africa, UGT, Abacus, Rajsic, Cortese and Doyle seek insurance coverage on their own behalf and/or on behalf of others under the insurance policy for the underlying lawsuit filed by Mainstream, the Berman Trust, Berman and Krneta and TIC denies any such insurance coverage applies under the insurance policy.

## **CORPORATE ROLES OF THE DEFENDANTS**

21. As of April 17, 2025, Mainstream held a 21.25 % interest in Sun Africa and UGT.

22. Krneta controls Mainstream.

23. As of April 17, 2025, Berman Trust held a 21.25 % interest in Sun Africa and UGT.

24. Berman controls the Berman Trust.

25. As of April 17, 2025, Abacus held a 51.25% interest in Sun Africa and UGT.

26. Abacus is owned by Denou.

27. Denou is controlled by Rajsic.

28. Berman is on the Sun Africa board of managers.

29. Berman is on the UGT board of managers.

30. Krneta is on the Sun Africa board of managers.

31. Krneta is on the UGT board of managers.

32.     Rajsic is on the Sun Africa board of managers.

33.     Rajsic is on the UGT board of managers.

34.     Rajsic was appointed as a manager of Sun Africa and UGT by Denou.

35.     Rajsic joined the board of managers of Sun Africa in 2024.

36.     Rajsic joined the board of managers of UGT in 2024.

37.     In 2025, before April 17, 2025, Rajsic either was, or asserted that he was, appointed Chairman of the Board of Sun Africa.

38.     In 2025, before April 17, 2025, Rajsic either was, asserted that he was, appointed Chairman of the Board of UGT.

39.     Cortese is on the Sun Africa board of managers.

40.     Cortese is on the UGT board of managers.

41.     Cortese is the CEO of Sun Africa.

42.     Cortese is the CEO of UGT.

43.     Doyle is the CFO of Sun Africa.

44.     Doyle is the CFO of UGT.

### POLICY APPLICATION MISREPRESENTATIONS

45.     TIC issued an Applied Financial Lines Private Management Liability Insurance Policy bearing number BFLPDOTFL012500_020399_04 to Sun Africa as the Named Insured for the Policy Period of June 15, 2025, to December 15, 2026 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit 1**.

46.     The Policy is issued on a surplus-lines basis in Florida.

47.     Pursuant to Endorsement No. 3, UGT is an additional Named Insured on the Policy.

48. Sun Africa submitted an insurance application (the "Application") to induce TIC to issue the Policy. A copy of the Application is attached hereto as **Exhibit 2**.

49. The Application was signed and dated on behalf of Sun Africa on April 17, 2025. Ex. 2 at pg. 7.

50. The Application included the following questions answered by Sun Africa:

## III. DIRECTORS AND OFFICERS LIABILITY INFORMATION

Complete if coverage is requested.

11. Total number of common shareholders, partnership interests or LLC units: 2 _____  Common shares outstanding: _____

For any shareholder owning 5% or more of the Applicant's voting shares, complete the following:

| Shareholder Name | % Owned | Is this shareholder a private equity or venture capital firm? | Does this shareholder have board representation? |
|---|---|---|---|
| Robert J. Berman | 28 % | ○ Yes  ○ No | ○ Yes  ○ No |
| Nikola Krneta | 73 % | ○ Yes  ○ No | ○ Yes  ○ No |
|  | % | ○ Yes  ○ No | ○ Yes  ○ No |
|  | % | ○ Yes  ○ No | ○ Yes  ○ No |

12. Is any of the Applicant's stock held by an Employee Stock Ownership Plan (ESOP)?  ○ Yes  ○ No

13. Has the Applicant or any of its subsidiaries experienced any changes to key executives (Chairman, President, CEO, CFO) in the past 12 months due to reasons other than death or retirement at the normal retirement age?  ○ Yes  ⊙ No
If "Yes," please provide details: _____

14. Is the Applicant or any of its subsidiaries in violation of any debt covenant?  ○ Yes  ⊙ No
If "Yes," please provide details: _____

Ex. 2 at pg. 2.

51. Sun Africa answered "2" in response to Question 11 at Section III of the Application asking "11. Total number of common shareholders, partnership interests or LLC units."

52. As of April 17, 2025, there were actually three (3) common shareholders, partnership interests or LLC units in Sun Africa.

53. Sun Africa's answer to Question 11 at Section III of the Application was therefore false.

54. Under Question 11 at Section III of the Application, Sun Africa listed "Shareholder Name" and "% Owned" as Berman with a 28% ownership, and Krneta with a 73% ownership.

55. Krneta did not hold a 73% ownership interest in Sun Africa as of April 17, 2025, as stated in the Application.

56. Instead, as of April 17, 2025, Abacus owned 51.25% of Sun Africa, and Krneta through his entity Mainstream, owned only 21.25% of Sun Africa.

57. Therefore, the Application representation at Section III that Krneta was the 73% shareholder of Sun Africa was false.

58. Question 13 of the Application at Section III asked: "Has the Applicant or any of its subsidiaries experienced any changes to key executives (Chairman, President, CEO, CFO) in the past 12 months due to reasons other than death or retirement at the normal retirement age?" Sun Africa answered "no."

59. The Application answer to Question 13 at Section III was false.

60. Abacus, which in prior years had been owned by Mainstream, was sold to Denou in a transaction that took place in November of 2024.

61. Denou, which owns Abacus as the 51.25% owner of Sun Africa, is controlled by Rasjic.

62. Through his control of Denou, Rajsic is the actual, or effective, 51.25% shareholder of Sun Africa.

63. Rajsic wrote to Berman, Krneta, Cortese, and Doyle in February of 2025 referring to himself as the "majority shareholder" of Sun Africa.

64. Rajsic is a convicted felon.

65. Rajsic was charged with crimes in Illinois for forgery (Cook County, Illinois Case No. 11CR1503201) and insurance fraud (Cook County Case No. 11CR0080401).

66. Rajsic pled guilty in the Illinois criminal actions and served prison time.

67. Rajsic was also sued by his insurer Valley Forge for committing insurance fraud in Cook County, Illinois, Case No. 2010CH29754, and the court in such action entered judgment in favor of Valley Forge and against Rajsic under the Illinois Insurance Fraud Act (720 ILCS 5/46-5(a)), awarding Valley Forge double and treble damages, attorney's fees, and litigation costs totaling $3,251,331.82.

68. Rajsic filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida (Case No. 14-28624-BKC) and Valley Forge filed an adversary proceeding therein, in which it procured a ruling that Rajsic could not discharge the Valley Forge judgment debt. Rajsic appealed that ruling and it was affirmed by the U.S. District Court for the Southern District of Florida. *See*, *Rajsic v. Valley Forge Insurance Co.*, 574 B.R. 312 (S.D. Fla. 2017).

69. Prior to inception of the Policy, Sun Africa did not disclose to TIC that Rajsic had procured over 50% control of Sun Africa.

70. Prior to inception of the Policy, Sun Africa did not disclose to TIC that its new controlling manager was Rajsic, or that he had a criminal history.

71. Prior to inception of the Policy, Sun Africa did not disclose to TIC that its new controlling shareholder was Rajsic, or that he had a criminal history.

### UNDERLYING LAWSUIT

72. On or about January 2, 2026, Mainstream, Berman Trust, Krneta and Berman filed a lawsuit against Rajsic, Cortese, Abacus, Sun Africa and UGT in the Court of Chancery, State of Delaware under Case No. 2026-0005 (the "Underlying Lawsuit").

73. On or about February 10, 2026, an Amended Complaint was filed in the Lawsuit. A copy of the public version of the Underlying Lawsuit Amended Complaint is attached hereto and filed under seal, as **Exhibit 3**.

74. In the Underlying Lawsuit, Krneta, Berman, Mainstream and Berman Trust allege that they are members and managers of Sun Africa and UGT.

75. The Underlying Lawsuit alleges that Rajsic has taken improper control of Sun Africa and UGT to the exclusion of the Underlying Lawsuit plaintiffs including Krneta and Berman.

76. The Underlying Lawsuit alleges that Rajsic, with Cortese and Doyle, have refused to allow mandatory distributions to be made to the Underlying Lawsuit plaintiffs required by corporate documents.

77. The Underlying Lawsuit alleges that Rajsic, with Cortese and Doyle, have caused improper payments to be made for his benefit utilizing corporate funds.

78. The Underlying Lawsuit alleges that Rajsic appointed himself Chairman of the Board of Sun Africa at a meeting on March 31, 2025, and in a letter to general counsel dated April 2, 2025, directing amendment to the Sun Africa Operating Agreement.

79. The Underlying Lawsuit alleges that Rajsic appointed himself Chairman of the Board of UGT at a meeting on March 31, 2025, and in a letter to general counsel dated April 2, 2025, directing amendment to the UGT Operating Agreement.

## THE POLICY

80. The Policy's General Terms and Conditions include the following definitions:

**II. DEFINITIONS**

A. "**Application**" means all written materials and information, including signed applications and any information attached thereto, incorporated therein, submitted,

or made available by or on behalf of you to us in connection with underwriting of this Policy. The **Application** is deemed attached to and incorporated into this Policy.

I. "**Executive**" means any natural person who was, is or shall be a duly elected or appointed:

>1. Director, officer, or member of the board of the managers or management committee of the **Insured Organization**;
>
>2. In-house general counsel of the **Insured Organization**;
>
>3. Any duly elected or appointed advisory, supervisory, or scientific advisory board member;
>
>4. Stockholders' representative;
>
>5. General Partner; and
>
>6. Any foreign or functional equivalent of any of the foregoing.

K. "**Insured**" shall have the meaning ascribed to it in the applicable **Coverage part**.

L. "**Insured Organization**" means, collectively:

>1. **Named Insured**; and
>2. Any **Subsidiary**;
>
>including any such organization as a **Debtor in possession**.

81.     The Policy's General Terms and Conditions include the following Application Clause at Section XIV:

### XIV. APPLICATION

You represent and acknowledge that the statements and information contained in the **Application** are true, accurate, and complete, and form the basis of this Policy and are deemed to be incorporated into and constituting a part of this policy.

This Policy is issued in reliance upon the truth and accuracy of the **Application**.

If the **Application** contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by Us, this Policy shall be void ab initio and shall not afford coverage for any **Insured** who knew on the inception date of this Policy the facts that were not truthfully disclosed in the **Application**,

whether or not the **Insured** knew the **Application** contained such misrepresentation or omission.

For the purpose of determining coverage, knowledge possessed by:

A. Any **Team member** shall not be imputed to any other **Team member**; and

B. the **Insured Organization**'s Chief Executive Officer, functionally equivalent, or anyone signing the **Application** shall be imputed to all **Insureds** other than **Team members**.

82.     The Policy's General Terms and Conditions include the following additional terms, among others:

### XXII. PRESUMPTIVE INDEMNIFICATION

You and any other **Insured Organization** agree to indemnify the **Team members**, including the advancement of **Defense costs** incurred by the **Team member**, to the fullest extent permitted by law, or the certificate or articles of incorporation, charter, by-laws or limited liability company agreement or limited partnership agreement, if applicable, of an **Insured Organization**, or the functional or foreign equivalent of any of the foregoing.

\* \* \*

### XXIV. DETERMINATION OF JURISDICTION FOR PUNITIVE DAMAGE AWARDS

\* \* \*

E. Choice of Law

Any disputes involving this Policy shall be resolved applying the law of the state or jurisdiction indicated in the Declarations as the principal address of the **Insured Organization**.

83.     The Policy includes a Private Management Liability Insurance Directors, Officers & Organization Liability Insurance (the "D&O") Coverage Part that includes the following Insuring Agreements:

### I. INSURING AGREEMENTS

A. Non-Indemnifiable Directors & Officers Liability

We will pay **Non-Indemnifiable Loss** on behalf of the **Team Members** resulting from a Claim first made against the **Team Members** during the Policy Period or

any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.

B. Indemnifiable Directors & Officers

We will pay **Loss** on behalf of the **Insured Organization** that such **Insured Organization** has indemnified the **Team Members** resulting from a Claim first made against the **Team Members** during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.

C. Entity Liability

We will pay **Loss** on behalf of the **Insured Organization** resulting from a Claim first made against such **Insured Organization** during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Insured Organization**.

84.     The D&O Coverage Part includes the following definitions:

**I. DEFINITIONS**

A. "**Claim**" means any:

1. Written demand against the Insured for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution;

2. Notice of violation, notice of charges, indictment, arrest, or extradition warrant summons, civil or criminal complaint, demand for arbitration, request for injunction, order to show cause, or other similar pleading or charging document;

M. "**Insured**" means:

1. With respect to Insuring Agreement A and E, **Team Members**.

2. With respect to all other Insuring Agreements B, C, D, and F, the **Insured Organization**

N. "**Loss**" means the amount that an **Insured** is legally obligated to pay resulting from a **Claim**, including damages, settlements, judgments, pre- and post-judgment interest, **Defense Costs**, and Investigation Costs

**Loss** also specifically includes:

1. Any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against the **Insured** where such fees and expenses are awarded pursuant to a covered judgment against the **Insured** or a covered settlement (consented to by us, which consent shall not be unreasonably withheld or denied) to which you are a party;

2. Regarding Insuring Agreement A, damages under Section of the Securities Exchange Act of 1934, as amended; and

3. Civil fines or civil penalties incurred by **Team Members** under Section 2(g) 2(B) of the Foreign Corrupt Practices Act, as amended and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)).

**Loss**, other than **Defense Costs**, does not include:

a) Fines, penalties and taxes, other than those set described in Subsection 3. of this Definition;

b) The price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in, or assets of, an entity is inadequate. **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to any **Non-Indemnifiable Loss** in connection with such **Claim**;

c) Social security benefits, employment termination severance payments, other than any such payments negotiated with and consented to by us as part of a settlement, commissions or employment related benefits of any kind, including any contributions to an employee benefit plan;

d) Costs incurred by the **Insured** to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or

e) Any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that we will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of your securities constitutes uninsurable **Loss** due to the alleged violations of Sections 11 or 12 of the Securities Act of 1933 as amended (including alleged violations of Sections 11 or 12 of the Securities Act of 1933 by a **Controlling Person** pursuant to Section 15 of the Securities Act of 1933).

O. "**Non-Indemnifiable Loss**" means any **Loss** incurred by **Team Members** that the **Insured Organization** has not indemnified.

T. "**Team Member**" means any:

    1. **Executive**; or

    2. **Employee**.

U. "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

    1. A **Team Member** in their capacity as such or in an **Outside Capacity**;

    2. A **Team Member** in their capacity as a **Controlling Person** or as a **Selling Shareholder**;

    3. With respect to Insuring Agreement C, the **Insured Organization**; or

    4. Any matter **Claim**ed against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.

85.    The Policy's D&O Coverage Part includes the following Exclusion, among others:

## IV. EXCLUSIONS

For the purpose of determining the applicability of any Exclusion set forth in this exclusions Section, the **Wrongful Act** or knowledge of any **Team Member** shall not be imputed to any other **Team Member**, and only the **Wrongful Act** or knowledge of the Chief Executive Officer or functionally equivalent of the **Insured Organization** shall be imputed to the **Insured Organization**.

We shall not be liable under this Coverage Part to pay any **Loss** on account of that portion of any **Claim** made against You:

F. **Insured** versus **Insured**

For any **Claim** brought or maintained by or on behalf of:

    1. an **Insured Organization**;

    2. a **Team Member** in any capacity; or

    3. an **Outside Entity** arising out of an **Insured's** service in an **Outside Capacity**;

Provided this exclusion does not apply to:

    i. **Defense Costs** covered under Insuring Agreement A;

ii. Any **Claim** brought by a whistleblower pursuant to any federal, state, foreign or local whistleblower law;

iii. Any **Claim** brought as a derivative action on behalf of the **Insured Organization**, by one or more persons who are not directors, officers, trustees, managers, or equivalent executives of the **Insured Organization**, and without the solicitation, assistance, active participation, or intervention of any **Insured** unless such solicitation, participation or intervention by the **Insured** is solely pursuant to or in compliance with a subpoena or similar legal process or is protected pursuant to any whistleblower statute, rule, or regulation;

iv. Any **Claim** by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, creditor's committee or rehabilitator of an **Insured Organization** or **Outside Entity** or any assignee of any of the foregoing;

v. Any **Claim** maintained in any non-common law jurisdiction outside the United States of America;

vi. Any **Claim** by a **Team Member** who has not served as a **Team Member** within one (1) year prior to the date on which the **Claim** is first made and who maintains such **Claim** without the active assistance or active participation of the **Insured Organization** or **Outside Entity**, or any other **Team Member** who is serving or has served as a **Team Member** within such one (1) year period; or

vii. Any **Claim** against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.

H. Personal Profit & Illegal Conduct

For any personal profit, remuneration, or financial advantage to which You are not legally entitled; or for any willful violation of any law, statute or regulation, or any deliberately fraudulent or criminal act, error, or omission committed by You;

If evidenced by a final and non-appealable adjudication adverse to You in the underlying action.

For the purpose of applying these Personal Profit & Illegal Conduct exclusions:

    1. the **Wrongful Act**, knowledge of, or facts pertaining to any **Team Member** shall not be imputed to any other **Team Member**; and

2. only the **Wrongful Act** by the Chief Executive Officer or functionally equivalent of any **Insured Organization** shall be imputed to a **Insured Organization**.

### COUNT I: DECLARATORY JUDGMENT THAT THE POLICY APPLICATION CONTAINED MATERIAL MISREPRESENTATIONS SUCH THAT THE POLICY IS VOID *AB INITIO* AND/OR NO COVERAGE SHALL APPLY UNDER THE POLICY FOR SUN AFRICA, UGT, RAJSIC, CORTESE, DOYLE, BERMAN OR KRNETA

86.     TIC realleges and incorporates by reference the allegations in paragraphs 1 through 85 above.

87.     The Policy includes an "Application Clause" in the General Terms and Conditions which provides as follows:

**XIV. APPLICATION**

You represent and acknowledge that the statements and information contained in the **Application** are true, accurate, and complete, and form the basis of this Policy and are deemed to be incorporated into and constituting a part of this policy.

This Policy is issued in reliance upon the truth and accuracy of the **Application**.

If the **Application** contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by Us, this Policy shall be void ab initio and shall not afford coverage for any **Insured** who knew on the inception date of this Policy the facts that were not truthfully disclosed in the **Application**, whether or not the **Insured** knew the **Application** contained such misrepresentation or omission.

For the purpose of determining coverage, knowledge possessed by:

A. Any **Team member** shall not be imputed to any other **Team member**; and

B. the **Insured Organization**'s Chief Executive Officer, functionally equivalent, or anyone signing the **Application** shall be imputed to all **Insureds** other than **Team members**.

88.     The Policy's General Terms and Conditions define **Application** as follows:

**II. DEFINITIONS**

A. "**Application**" means all written materials and information, including signed applications and any information attached thereto, incorporated therein, submitted,

or made available by or on behalf of you to us in connection with underwriting of this Policy. The **Application** is deemed attached to and incorporated into this Policy.

89.     In order to induce TIC to issue the Policy, Sun Africa submitted a written Application to TIC signed and dated April 17, 2025. Ex. 2.

90.     The Application, which falls within the definition of **Application** in the Policy, contained material misrepresentations and omissions that materially impacted the risk assumed.

91.     The Application failed to identify the correct number of shareholders in response to Section III, Question 11.

92.     The Application failed to identify the correct ownership percentages of the owners, and the identity of the majority shareholder, in response to Section III, Question 11.

93.     The Application incorrectly answered "no" at Section III, Question 13, when asked if there were any changes in key executive positions such as Chairperson.

94.     **Application** submissions to TIC failed to disclose that the beneficial new majority owner was controlled by Rajsic, who is a convicted felon for conduct involving insurance fraud.

95.     The foregoing, and other failures in disclosures involving a majority interest transfer of ownership in Sun Africa and UGT, constitute material misrepresentations.

96.     Rajsic was aware of the truth of the matters misrepresented in the Application.

97.     Cortese, as CEO, was aware of the truth of one or more matters misrepresented in the Application.

98.     Doyle, as CFO, was aware of the truth of one or more of the matters misrepresented in the Application.

99.     Krneta, as manager, was aware of the truth of one or more of the matters misrepresented in the Application.

100. Berman, as manager, was aware of the truth of one or more of the matters misrepresented in the Application.

101. Accordingly, pursuant to the Policy's Application Clause, because the Policy **Application** materials contained material misrepresentations, the Policy is deemed void *ab initio* as to Sun Africa, UGT, Rajsic, Cortese, Doyle, Krneta and Berman, and it provides no coverage for the Underlying Lawsuit or any other matter.

102. To the extent that voiding the Policy under the Application Clause is deemed a Policy rescission requiring return of premium, TIC has already offered to pay, and stands ready to pay, the return of any premium paid for the Policy and any other sums required to effectuate such rescission.

103. Alternatively, and/or in addition, pursuant to the Policy's Application Clause, because the Policy **Application** materials contained material misrepresentations, the Policy "shall not afford coverage" as to Sun Africa, UGT, Rajsic, Cortese, Doyle, Berman or Krneta for the Underlying Lawsuit or any other matter.

### COUNT II. IN THE ALTERNATIVE TO COUNT I, DECLARATORY JUDGMENT THAT THE POLICY APPLICATION CONTAINED MATERIAL MISREPRESENTATIONS SUCH THAT THE POLICY IS VOID *AB INITIO* AND DEEMED RESCINDED UNDER FLORIDA LAW

104. TIC realleges and incorporates by reference the allegations in paragraphs 1 through 85 above.

105. In order to induce TIC to issue the Policy, Sun Africa submitted a written Application to TIC signed and dated April 17, 2025.

106. The Application failed to identify the correct number of shareholders in response to Section III, Question 11.

107. The Application failed to identify the correct ownership percentages of the owners, and the identity of the majority shareholder, in response to Section III, Question 11.

108. The Application incorrectly answered "no" at Section III, Question 13, when asked if there were any changes in key executive positions such as Chairperson.

109. Application submissions to TIC failed to disclose that the beneficial new majority owner was controlled by Rajsic, who is a convicted felon for conduct involving insurance fraud.

110. The foregoing, and other failures in disclosures involving a majority interest transfer of ownership in Sun Africa and UGT, constitute material misrepresentations.

111. Rajsic was aware of the truth of the matters misrepresented in the Application.

112. Cortese, as CEO, was aware of the truth of one or more matters misrepresented in the Application.

113. Doyle, as CFO, was aware of the truth of one or more of the matters misrepresented in the Application.

114. Krneta, as manager, was aware of the truth of one or more of the matters misrepresented in the Application.

115. Berman, as manager, was aware of the truth of one or more of the matters misrepresented in the Application.

116. Accordingly, pursuant to Florida law, because the Policy Application materials contained material misrepresentations, the Policy is deemed void *ab initio* and is deemed rescinded in its entirety.

117. TIC has already offered to pay, and stands ready to pay, the return of any premium paid for the Policy and any other sums required to effectuate such rescission.

**COUNT III. DECLARATORY JUDGMENT: DEFENDANT ABACUS IS NOT INSURED UNDER THE POLICY AND IS NOT ENTITLED TO INSURANCE COVERAGE UNDER THE POLICY FOR THE UNDERLYING LAWSUIT**

118.    TIC realleges and incorporates by reference the allegations in paragraphs 1 through 85 above.

119.    The Policy's D&O Coverage Part includes only one Insuring Agreement that applies to an entity, Insuring Agreement C., which applies, among other requirements, only to **Loss** on behalf of the **Insured Organization**.

120.    **Insured Organization** is defined in the General Terms and Conditions of the Policy as: 1. **Named Insured**; and 2. Any **Subsidiary**; including any such organization as a **Debtor in possession**.

121.    The **Named Insured** on the Policy Declarations is Sun Africa, and, by endorsement, UGT is an additional **Named Insured**.

122.    Abacus is not a **Named Insured** on the Policy.

123.    Abacus is not a **Subsidiary** of any **Named Insured**.

124.    Therefore, Abacus is not an **Insured Organization** under the Policy and Abacus is not entitled to any insurance coverage under the Policy for the Underlying Lawsuit.

**COUNT IV.  DECLARATORY JUDGMENT THAT THE "INSURED VERSUS INSURED" EXCLUSION IN THE POLICY BARS COVERAGE FOR THE UNDERYING LAWSUIT**

125.    TIC realleges and incorporates by reference the allegations in paragraphs 1 through 85 above.

126.    The D&O Coverage Part includes an "Insured versus Insured" Exclusion at Section IV.F. which excludes coverage for any **Claim** brought or maintained by or on behalf of an **Insured Organization** or a **Team Member** in any capacity.

127. A **Team Member** is defined as an **Executive** or **Employee**.

128. Underlying Lawsuit plaintiff Berman is an **Executive** and therefore a **Team Member** as defined in the Policy.

129. Underlying Lawsuit plaintiff Krneta is an **Executive** and therefore a **Team Member** as defined in the Policy.

130. The Underlying Lawsuit is also pursued on behalf of Sun Africa and UGT, who are **Insured Organizations** under the Policy.

131. Therefore, the Underlying Lawsuit is brought by a **Team Member** in any capacity.

132. Therefore, the Underlying Lawsuit is brought by or on behalf of an **Insured Organization**.

133. None of the exceptions to the Insured versus Insured Exclusion apply.

134. Accordingly, the Insured versus Insured Exclusion applies to bar coverage under the Policy for the Underlying Lawsuit as to any **Insured** named as a defendant in the Underlying Lawsuit.

## COUNT V.  DECLARATORY JUDGMENT THAT OTHER TERMS IN THE POLICY EXCLUDE OR LIMIT COVERAGE FOR THE UNDERYING LAWSUIT

135. TIC realleges and incorporates by reference the allegations in paragraphs 1 through 85 above.

136. The Policy contains an Exclusion for improper personal profit and illegal conduct at Section IV.H. which will apply to limit or preclude coverage for relief sought against Rajsic in the Underlying Lawsuit.

137. The Policy contains an allocation provision that will apply to any coverage otherwise available to an **Insured** under the Policy.

138. The Policy contains another insurance clause that will apply to render the Policy's coverage excess to other available insurance for the Underlying Lawsuit.

139. The Policy's Insuring Agreements are not satisfied as to one or more **Insureds** or other parties claiming to be **Insureds** under the Policy with respect to the Underlying Lawsuit, including with respect to the definitions of **Insured**, **Wrongful Act** and **Loss**.

140. The Policy, attached hereto as Exhibit 1, contains other terms and conditions which will apply to limit or preclude coverage for the Underlying Lawsuit in the event the Policy otherwise applied to any **Insured**.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff TIC requests that this Honorable Court declare and adjudicate the rights, status, obligations, and duties of the parties under the Policy, including but not limited to the following:

a. As to Count I:

   i. Defendant Sun Africa's Policy Application materials contained material misrepresentations;

   ii. Defendants Rajsic, Cortese, Doyle, Berman and Krneta knew the truth of one or more of those misrepresentations;

   iii. The Policy's Application Clause applies due to material misrepresentations made in the Policy **Application** materials, and therefore the Policy is deemed void *ab initio* as to Sun Africa, UGT, Rajsic, Cortese, Doyle, Berman and Krneta and the Policy affords no coverage, and TIC has no obligations under the Policy, to these Defendants for the Underlying Lawsuit or any matter;

iv. The Policy's Application Clause applies due to material misrepresentations made in the Policy **Application** materials, and therefore no coverage shall apply, and TIC has no obligations under the Policy, to Sun Africa, UGT, Rajsic, Cortese, Doyle, Berman or Krneta for the Underlying Lawsuit or any matter.

b. As to Count II (solely in the alternative to Count I):

i. Defendant Sun Africa's Policy Application materials contained material misrepresentations;

ii. Therefore, the Policy is rescinded and deemed void *ab initio* such that no coverage applies, and TIC has no obligations, under the Policy for the Underlying Lawsuit or any other matter.

c. As to Count III (in addition to Counts I and II):

i. Defendant Abacus is not an **Insured** under the Policy and therefore no coverage applies under the Policy for the Underlying Lawsuit such that TIC has no obligations to Abacus under the Policy for the Underlying Lawsuit.

d. As to Count IV (in addition to or in the alternative to Counts I and II):

i. The Insured versus Insured Exclusion in the Policy applies to exclude any coverage under the Policy for the Underlying Lawsuit for Rajsic, Cortese, Doyle, Sun Africa, UGT, or any other Defendant who claims to be or may constitute an **Insured** under the Policy, and, therefore, TIC has no obligations under the Policy to Rajsic, Cortese, Doyle, Sun Africa, UGT, or any other Defendant who claims to be or may constitute an **Insured** under the Policy with respect to the Underlying Lawsuit.

e. As to Count V (in the alternative or in addition to Counts I-IV)

i. The Policy's Improper Profit or Illegal Conduct Exclusion applies to limit or exclude coverage to Rajsic for the Underlying Lawsuit;

ii. The Policy's allocation clause applies to require an allocation between **Insureds** and non-insureds and between covered and uncovered matters;

iii. The Policy's "other insurance" clause applies to render any coverage under the Policy excess to other insurance available to any **Insured**;

iv. The Policy's Insuring Agreements including as to **Insured**, **Wrongful Act** and **Loss** requirements are not satisfied;

v. Other Policy terms and conditions apply to limit or preclude coverage for the Underlying Lawsuit as further determined by this Court.

f. As to all Counts:

i. Any other declarations as to coverage under the Policy that is necessary based upon the terms and conditions of the Policy;

ii. Grant TIC the costs of this action and other relief as this Court deems equitable, just, and proper.

Dated: May 7, 2026.

Respectfully submitted,

**KAUFMAN DOLOWICH LLP**

*/s/Jesse Drawas*
Jesse D. Drawas, Esq.
Fla. Bar No. 68654
jdrawas@kaufmandolowich.com
100 SE Third Avenue, Suite 1500
Fort Lauderdale, FL 33394
Tel: (954) 302-2244
Fax: (888) 464-7982
*Attorney for TIC*